Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Kristen M. Agnew (State Bar No. 247656)
kagnew@diversitylaw.com
Nicholas Rosenthal (State Bar No. 268297)
nrosenthal@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
Telephone: (213) 488-6555
Facsimile: (213) 488-6554

Attorneys for Plaintiff and the Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO DELGADO,<br><br>Plaintiffs,<br><br>vs.<br><br>KLOECKNER METALS CORPORATION, et al.<br><br>Defendants. | Case No. 2:20-cv-07405-GW-SK<br><br>Assigned to Hon. Judge George H. Wu<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        November 8, 2021<br>Time:        8:30 a.m.<br>Courtroom: 9D, 9th Floor |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 8, 2021, at 8:30 a.m., or as soon thereafter as counsel may be heard, before the Honorable George H. Wu, in Courtroom 9D of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Plaintiff Ernesto Delgado ("Plaintiff") will and hereby does move the Court for preliminary approval of the proposed class and representative action settlement. Specifically, Plaintiff respectfully requests that the Court: (1) grant preliminary approval for the proposed class and representative action settlement; (2) grant conditional certification of the proposed settlement class; (3) authorize the mailing of the proposed notice to the class of the settlement; and (4) schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

Plaintiff makes this motion on the grounds that the proposed settlement is within the range of possible final approval, and notice should, therefore, be provided to the class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class and Representative Action Settlement, the attached Memorandum of Points and Authorities in Support, the Declarations of Larry W. Lee, Kristen M. Agnew, Nicholas Rosenthal, and Ernesto Delgado filed herewith, the Stipulated Settlement Agreement and Release of Claims filed herewith, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated:  October 8, 2021                     DIVERSITY LAW GROUP, P.C.

By: _____
Larry W. Lee
Kristen M. Agnew
Nicholas Rosenthal
Attorneys for Plaintiff and the Class

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   **INTRODUCTION AND SUMMARY OF AGREEMENT**......................... 8

   **A. Factual Allegations and Procedural Background**................................. 8

   **B. Summary of the Current Settlement** ........................................ 9

   **C. The Settlement is Fair, Reasonable, and Adequate** ............................. 12

II.  **LEGAL ANALYSIS** .............................................................. 12

   **A. The Class at Issue and the Settlement Fund** ......................................... 12

   **B. Two-Step Approval Process**............................................. 13

   **C. The Standard for Preliminary Approval**.............................................. 14

   **D. Procedures for Settlement Before Class Certification** ......................... 15

   **E. The Settlement is Fair and Reasonable and Not the Result of Fraud or
   Collusion** .............................................................................. 16

      1.    **The Settlement May be Presumed Fair and Reasonable** ............. 16

   **a.  Experience of Class Counsel** ........................................................ 17

   **b.  Investigation Prior to Settlement** ............................................ 17

      2.    **The Settlement is Fair, Reasonable, and Adequate** ..................... 18

   **a.  Risk of Continued Litigation** ....................................................... 18

   **b.  The Settlement is Within the Range of Reasonableness**...................... 21

   **c.  The Complexity, Expense, and Likely Duration of Continued
   Litigation Against the Settling Defendant Favors Approval** ................... 22

   **d.  Non-Admission of Liability by Defendant**.......................................... 23

   **F.  The Proposed Settlement Class Satisfies the Elements for Certification**
      23

      1.    **Numerosity**................................................................... 23

      2.    **Ascertainability** ............................................................. 24

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT

**3.    Typicality** ................................................................... 24

**4.    Commonality** ............................................................. 24

**5.    Adequacy** .................................................................. 25

**6.    Common Questions of Law and Fact Predominate** ...................... 25

**7.    Superiority of Class Action** ..................................... 26

**G. The Notice to be Given is the Best Practical** ............................. 26

**H. Attorneys' Fees, Costs, and Class Representative Service Award** ...... 27

**I.    Settlement Administrator** ............................................. 27

**J.    Class Action Fairness Act ("CAFA")** .......................... 28

**III.    CONCLUSION** ................................................................ 28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979) ..................... 18

*Chavez v. Converse, Inc.*, N.D. Cal. Case No. 15-3746 NC, Dkt. No. 89 (N.D. Cal. Sept. 22, 2016) ................................................. 24

*Coleman v. Jenny Craig, Inc.*, 649 Fed. Appx. 387, 388-389 (9th Cir. April 20, 2016) ........................................................ 19

*Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998)............................................ 26

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ........................................ 18, 22

*Greer v. Dick's Sporting Goods, Inc.*, 2017 WL 1354568, at *6 (E.D. Cal. Apr. 13, 2017) ........................................................ 24

*Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990) ....................... 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).................... 24, 25

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) ................................................................. 23

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980) ................ 16

*In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ..................................... 15

*In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995)............................... 18

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ................................................................. 15

*In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988) ..................................... 23

*Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir.)........................................ 23

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 9th Cir. 1978) ......... 24

*Magadia v. Wal-Mart Assocs., Inc.*, 324 F.R.D. 213, 225 (N.D. Cal. 2018) ......... 24

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987)................................................. 16

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 596 (C.D. Cal. 2015) ................................................................................................ 24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ........................................................................................... 16, 22

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ............................................ 13, 14, 15, 22

*Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) ................................................................................................ 24

*Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978) .................................. 23

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970) ............................................................ 14

*Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989) ......................................... 16

*Rodriguez v. Nike Retail Services, Inc.*, 2016 WL 8729923, at *6 (N.D. Cal. Aug. 19, 2016) ........................................................................................ 24

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).......................................................................................... 16

*Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979) ................................ 16

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989) ............................................................................................. 13, 15

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).................... 22

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) .................................................................................................... 26

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).......... 15

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)................................ 15

*Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971) .......................................... 22

**Statutes**

28 U.S.C. § 1715................................................................................................ 27

28 U.S.C. § 1715(b) ........................................................................................... 27

California Civil Code § 1542 .............................................................................. 26

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT

Labor Code § 226(e) .................................................................. 20

 **Rules**

Fed. R. Civ. P. 23(a)(1) ............................................................ 23

Fed. R. Civ. P. 23(a)(2) ............................................................ 24

Fed. R. Civ. P. 23(c)(2)(B) ....................................................... 25

Fed. R. Civ. P. 23(e)(B) ............................................................ 26

Rule 23(a)(3) ............................................................................. 23

Rule 23(a)(4) ............................................................................. 24

Rule 23(b)(3) ............................................................................. 25

**Other Authorities**

4 Conte & Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2010)........ 13, 15

4 Newberg on Class Actions, at § 11.41 ................................... 22

4 Newberg on Class Actions, at §11.45 .................................... 21

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010)..... 14

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632 .......... 13, 14, 18

*Newberg on Class Actions* at §11.47 ...................................... 16

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiff Ernesto Delgado ("Plaintiff") respectfully requests that the Court grant preliminary approval of the Stipulated Settlement Agreement and Release of Claims (hereinafter referred to as "Settlement Agreement" or "Stipulation") that he has reached in the above-captioned matter with Defendant Kloeckner Metals Corporation ("Defendant") (Plaintiff and Defendant collectively referred to as the "Parties").

### A.    Factual Allegations and Procedural Background

Plaintiff was hired by Defendant as a non-exempt employee in Los Angeles County, California. Plaintiff worked as a crane operator from January 2014 until December 2019.

First, Plaintiff alleges that he and other non-exempt employees in the State of California were denied proper off-duty meal breaks during their employment. Specifically, Plaintiff alleges that due to Defendant's timekeeping system that rounded meal period punch in and out times, he and his fellow non-exempt workers did not receive meal period premium pay for late or short meal periods because Defendant's timekeeping system recorded them as legally compliant meal periods. Employees were also not provided a second meal break for shifts of twelve hours or longer.

Second, Plaintiff alleges that Defendant required employees to remain on work premises during rest breaks, which amounted to impermissible "on-duty" rest periods.

Third, Plaintiff alleges that when he and other non-exempt employees were paid overtime and/or shift differential wages, the corresponding wage statements failed to identify the applicable rates of pay and number of hours worked for such wages.

Finally, Plaintiff alleges that Defendant issued final wages in the form of a

8

pay card to Plaintiff and other employees upon separation of employment. As the pay card was not fully cashable, usable at all financial institutions, and accompanied by various fees with use, Plaintiff and other employees did not receive all wages owed upon separation of employment.

Defendant denies Plaintiff's allegations and contends that it has complied with its obligations under the law.

On June 10, 2020, Plaintiff commenced this action in Superior Court for the State of California, County of Los Angeles, alleging claims for violation of California Labor Code §§ 201-203, 212-213, 226, 226.7, 512, and 2698, *et seq*., the Private Attorneys General Act ("PAGA"), and California Business and Professions Code § 17200 *et seq*. ("Complaint").

On August 17, 2020, Defendant filed a Notice of Removal of Action to the United States District Court for the Central District of California.

The Parties thoroughly investigated the facts relating to the claims alleged in the Complaint. Plaintiff conducted formal written discovery, including propounding interrogatories and requests for production. Plaintiff also obtained and reviewed Defendant's discovery responses and document production and took the deposition of Defendant's FRCP 30(b)(6) witnesses regarding its meal and rest break and payroll policies and procedures. Defendant also took the deposition of Plaintiff. (Declaration of Nicholas Rosenthal ("Rosenthal Decl.") ¶ 2.)

The Parties then agreed to conduct a private mediation with wage and hour class action mediator Steven J. Serratore, Esq. on March 22, 2021. (Rosenthal Decl. ¶ 3.) In connection with the mediation, Defendant provided Plaintiff with data for the entire class, which permitted Plaintiff's counsel to conduct a damage analysis. (*Id*.)

**B.    Summary of the Current Settlement**

Again, on March 22, 2021, the Parties attended an all-day mediation before Steven J. Serratore. Despite a full day of negotiations, the Parties were unable to

9

reach an agreement. The Parties continued negotiations over the course of several months, and with the assistance of Mr. Serratore, ultimately reached an agreement to resolve the case on a class-wide basis. (Rosenthal Decl. ¶ 5.) The Parties memorialized their agreement in the concurrently filed Settlement Agreement, which is attached as **Exhibit A to the Declaration of Nicholas Rosenthal**.

The Settlement Agreement provides for a total settlement sum of Four Hundred Sixty-Five Thousand Dollars ($465,000.00), inclusive of payments to Settlement Class Members, the class representative service award, attorneys' fees and costs, payment to the State of California Labor and Workforce Development Agency (pursuant to PAGA), and settlement administration costs.

Pursuant to the terms of the Settlement Agreement, the Net Settlement Amount ("NSA") (after deduction of attorneys' fees in the amount of up to $155,000.00, litigation costs up to $25,000.00, service award in the amount of up to $10,000.00, PAGA penalties in the amount of $30,000.00 (or 75% of $40,000.00) to the Labor and Workforce Development Agency (the "LWDA"), and costs of settlement administration in the amount of approximately $11,000.00) is approximately $234,000.00. (Settlement Agreement ¶¶ A.17; C.41(a), (e), (f), (g), (h).) Twenty percent (20%) of the Individual Settlement Amounts distributed to Participating Class Members will be allocated as wages, subject to withholding of all applicable taxes, and 80% will be allocated as interest and penalties. (*Id*. ¶ C.41(d).) Defendant will be responsible for the employer portion of payroll taxes. (*Id*. ¶ C.41(a).)

Individual Settlement Payments will be calculated based on the number of weeks a Settlement Class Member worked during the Class Period. (*Id*. ¶ C.41(c).) Specific calculations of Individual Settlement Payments will be made as follows:

1.    The Settlement Administrator will determine the aggregate number of Weeks Worked by Settlement Class Members during the Class Period

("Total Weeks Worked"). The Settlement Administrator will then divide the Net Settlement Amount by the Total Weeks Worked to determine a per workweek value ("Workweek Value"). The Workweek Value will be multiplied by the number of Weeks Worked by each Settlement Class Member during the Class Period to determine the distribution, prior to legal deductions, for each Settlement Class Member. (*Id*. ¶ C.41(c).)

2. If there are any timely submitted Requests for Exclusion, the Settlement Administrator shall proportionately increase the Individual Settlement Amounts for each Participating Class Member so that the amount actually distributed to Participating Class Members equals 100% of the Net Settlement Amount. (*Id*.)

3. Data from Defendant's payroll records will be presumed to be correct, unless a Settlement Class Member timely demonstrates otherwise to the Settlement Administrator by credible evidence. All workweek disputes will be reviewed by counsel for the Parties, and if they are unable to agree, shall be decided by the Settlement Administrator. (*Id*. ¶ G.57.)

**Significantly, this settlement is non-reversionary and claim forms are not required**. In other words, none of the unclaimed settlement funds will revert back to Defendant and a Settlement Class Member need not submit a claim to receive his or her share. (*Id*. ¶ C.42.) Instead, the Settlement Class Member will automatically receive a check in connection with resolution of the class and PAGA claims so long as he or she does not opt-out. (*Id*. ¶ G.59(a).) Any remaining monies from uncashed checks will be distributed to the California State Controller's Office, Unclaimed Property Division, in the name of the Settlement Class Member. (*Id*. ¶ G.64.)

The class members can be ascertained from Defendant's payroll records.

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

Based upon Defendants' records, the number of unique class members is approximately 339. (*Id.* ¶ G.61.) Further, as discussed above, class members have the right to opt-out of the settlement of the class claims.

### C.    The Settlement is Fair, Reasonable, and Adequate

Based on their own respective independent investigations and evaluations, the Parties and their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement is fair, reasonable, and adequate and is in the best interests of the Class and the Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation. (Rosenthal Decl. ¶ 7; Declaration of Larry W. Lee ("Lee Decl.") ¶ 8; Declaration of Kristen M. Agnew ("Agnew Decl.") ¶ 9.)

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further denies that, for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. If this case continued in litigation, Defendant also would assert that Plaintiff would not be able to certify his claims or prevail on liability. Defendant maintains that it has complied with all applicable wage and hour laws.

Based on 339 class members, each Participating Class Member will receive a raw average of approximately $690.27 after deduction for attorneys' fees, service award to Plaintiff, payment to the LWDA, settlement administration costs, and litigation costs. Each individual class member's settlement amount may be more or less than this raw average, depending on the number of weeks the class member worked during the Class Period.

## II.    LEGAL ANALYSIS

### A.    The Class at Issue and the Settlement Fund

Defendant has agreed to collect information regarding the identity of the members of the Settlement Class. The Parties have further agreed and stipulated that this class be certified on a provisional, non-mandatory basis for the purposes

of this settlement only. (*Id.* ¶ K.78.) As set forth in the Settlement, the Parties have agreed that the settlement is non-reversionary and that claim forms will not be required.

## B.    Two-Step Approval Process

Any settlement of class litigation must be reviewed and approved by the Court. This is done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and approval by the court after notice has been distributed to the class members for their comment or objections. The *Manual for Complex Litigation, Fourth* ("MCL") states:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties.  If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MCL § 21.632 (Fed. Jud. Ctr., 4th ed. 2004).

Thus, the preliminary approval by the trial court is simply a conditional finding that the settlement appears to be within the range of acceptable settlements. As Professor Newberg comments, "[t]he strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal may vary. The court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid subject only to any objections that may be raised at a final hearing." 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11.26

13

(4th ed. 2010). Accordingly, a court should grant preliminary approval of a class action settlement where it is within the "range of reasonableness." Here, the Parties have reached such an agreement and have submitted it to the Court in connection with this filing.

### C.    The Standard for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this case. *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010). In considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement...may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

"The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." MCL § 21.633. Here, the proposed

settlement does not pose such issues. This was a highly contentious litigation with the Parties each being represented by highly competent counsel. As discussed above and the declarations submitted herewith, the Parties engaged in substantial motion practice and conducted thorough investigations related to the claims and defenses alleged in this case. Further, the proposed settlement was reached after the Parties utilized the assistance of an experienced mediator and after substantial arm's-length negotiations between the Parties.

As detailed herein, the proposed Settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness. The Parties' attorneys have extensive experience in employment law, particularly wage and hour litigation, and reached settlement only after mediation and extensive arm's-length negotiations subsequent to the mediation.

### D. Procedures for Settlement Before Class Certification

The parties also may, at the preliminary approval stage, request that the court provisionally approve certification of the class – conditional upon final approval of the settlement. Settlements are highly favored, particularly in class actions. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice*, 688 F.2d at 625; *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997). Plaintiff requests such provisional approval at the preliminary approval hearing:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal…may be set out in conditional orders granting tentative approval to the various items submitted to the court.  Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 *Newberg on Class Actions* §11.26.

There is a presumption that a proposed settlement is fair and reasonable

15

when it is the result of arm's-length negotiations. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (citations omitted); *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair."). Here, the Parties have also stipulated to certify the class for purposes of this settlement only. For reasons set forth in greater detail below, Class Counsel is of the opinion that this case can be certified for settlement purposes.

**E.    The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion**

**1.    The Settlement May be Presumed Fair and Reasonable**

Courts presume the absence of fraud or collusion in the negotiation of settlement unless evidence to the contrary is offered. *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir. 1987); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980). Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

While the recommendations of counsel proposing the settlement are not

conclusive, the Court can properly take them into account, particularly where, as
here, they appear to be competent and have experience with this type of litigation.
4 *Newberg on Class Actions* §11.47; *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at
528 ("So long as the integrity of the arm's length negotiation process is preserved,
however, a strong initial presumption of fairness attaches to the proposed
settlement…and 'great weight' is accorded to the recommendations of counsel,
who are most closely acquainted with the facts of the underlying litigation.")
(citations omitted).

### a.    Experience of Class Counsel

Here, counsel for the Parties have a great deal of experience in wage and
hour class action litigation. Plaintiff's Counsel have been approved as class
counsel in a large number of other wage and hour class actions. (Rosenthal Decl. ¶
12; Lee Decl. ¶¶ 5-6; Agnew Decl. ¶¶ 5-6.)

Plaintiff's counsel also conducted an extensive investigation of the factual
allegations, formal written and deposition discovery, communicated with putative
class members, and obtained data for the entire class. (Rosenthal Decl. ¶ 2.) Thus,
based upon such experience and knowledge of the current case, Plaintiff's Counsel
believe that the current Settlement is fair, reasonable, and adequate. (Rosenthal
Decl. ¶ 7; Lee Decl. ¶ 8; Agnew Decl. ¶ 9.)

### b.    Investigation Prior to Settlement

Each side has apprised the other of their respective factual contentions, legal
theories, and defenses, resulting in extensive arm's-length negotiations taking
place among the Parties. Indeed, prior to the mediation, Defendant provided to
Plaintiff detailed pay and time data for the entire Class, which included the number
of payroll periods at issue. From this data, Plaintiff's counsel was able to calculate
the maximum amount of class-wide damages, which is approximately $5,584,862,
which is based on approximately $1,559,572 owed due to 57,229 noncompliant
meal breaks (based on an average hourly rate of pay of $18.66/hour),

17

approximately $3,602,033 owed due to 193,035 noncompliant rest breaks (based on an average hourly rate of $18.66/hour), approximately $174,567 for potential waiting time penalties for 39 separated employees, and approximately $248,600 for 2,522 inaccurate wage statements. (Rosenthal Decl. ¶ 10.)

With respect to the PAGA penalties, which are discretionary and subject to reduction by this Court, the potential maximum is approximately $2,364,500. (*Id.*) Indeed, courts have affirmed the reduction of PAGA penalties. For example, in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018), the Court of Appeal affirmed the trial court's reduction of PAGA penalties by 90%. Here, the highest exposure for PAGA penalties is $2,364,500. If this Court reduced the PAGA penalties by 90%, as the trial court did in *Carrington*, then the total exposure would be only $236,450. (Rosenthal Decl. ¶ 10.)

Given the uncertainty of litigation, including the potential to not prevail on class certification or the merits, and the potential for appeals, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the class members in light of all known facts and circumstances and the risks inherent in litigation. (Rosenthal Decl. ¶ 7; Lee Decl. ¶ 8; Agnew Decl. ¶ 9.)

## 2.    The Settlement is Fair, Reasonable, and Adequate

The settlement for each participating class member is fair, reasonable, and adequate, given the inherent risk of litigation, the risk of appeals, the risks in an area where it is argued that the law is unsettled, and the costs of pursuing such litigation.

### a.    Risk of Continued Litigation

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk

of not prevailing, should be compared with the amount of the proposed settlement."); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979); MCL § 21.62 at 316.

Here, the Settlement affords fair relief to the Class, while avoiding significant legal and factual battles that otherwise may have prevented the Class from obtaining any recovery at all. Although Plaintiff's attorneys believe the Class's claims are meritorious, they are experienced and realistic, and understand that the outcome of a trial, and the outcome of any appeals that would inevitably follow if the Class prevailed at trial, are inherently uncertain in terms of both outcome and duration.

Indeed, there is significant doubt regarding whether Plaintiff's claims could achieve class certification and/or make it past a Motion for Summary Judgment.

Looking first at Plaintiff's claim for meal period violations, this claim is based on two different theories of liability. First, Defendant's time records demonstrate that for *some* non-exempt employees during *some* of the class period, their time punch entries for the start and end of meal periods were rounded to the nearest quarter hour. These same time punch records show the actual (i.e., the unrounded time stamps) so it is possible to determine which employees took meal periods that were in actuality short or late but were treated as compliant by Defendant. In total, Plaintiff's analysis of the putative class time records determined that there were 57,229 meal periods that were short or late that were rounded into compliance by Defendant. Second, Plaintiff contends that Defendant failed to ensure that employees took second meal periods on occasions when they worked more than 12 hours in a shift.

Addressing the first theory, there is significant case law suggesting that failure to pay meal or rest period premiums themselves is not a basis for class certification absent a company policy that in itself prevents employees from taking compliant meal or rest periods. *Coleman v. Jenny Craig, Inc.*, 649 Fed. Appx. 387,

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

388-389 (9th Cir. April 20, 2016). The *Coleman* court held that the meal period penalty is the *remedy* for a noncompliant meal period but that for a class to be certified, Plaintiff needed to show "a common practice of forcing employees to take short or late meal breaks." *Id* at 389. As applied here, even if Plaintiff could prove that rounding resulted in employees not receiving premium pay for noncompliant meal periods, Plaintiff would still need to first show that the company "forced" employees to take the noncompliant meal breaks in the first place. Based on the discovery taken by Plaintiff, there is no evidence that there was any policy that prevented or deterred employees from taking compliant meal periods, which would have made class certification on this claim difficult.

On Plaintiff's claim for failure to provide second meal periods in shifts over 12 hours, Plaintiff will again run into the obstacle of the fact that there was no evidence of a policy preventing employees from taking these breaks. The fact that many employees did not take second meal periods is not necessarily conclusive evidence in itself that Defendant was stopping them from doing so.

On Plaintiff's claim for rest periods, Plaintiff alleged that there was a company policy prohibiting employees from leaving the work premises during rest periods, which in turn amounted to employer control of the employee during a break that is supposed to be completely unencumbered per the *Augustus v. ABM Services, Inc.* decision. However, after engaging in discovery on the issue, Defendant denied that there was any such policy and no written document laid out any such policy. Further, *Augustus* centered on use of a walkie-talkie during rest breaks, not on a limitation regarding where an employee could or could not go. *Augustus v. ABM Services, Inc.*, 2 Cal. 5th 257, 260 (2016). Thus, this claim could be difficult to certify as well.

Turning to Plaintiff's claim for a violation of Labor Code Section 203 based on final wages being provided on paycards, this is an untested theory as to when the paycards only charge a fee at certain locations. As revealed in discovery, the

paycards issued to separated employees did not require that the employee incur a fee no matter what, but instead fees were only charged at certain ATM locations. While Plaintiff testified that he incurred fees when he attempted to access his final wages, Plaintiff had not yet obtained evidence that other employees had also been subject to these fees and gathering such evidence may not have been possible.

Finally, Plaintiff's claim for inadequate wage statements in violation of Labor Code Section 226(a) was also contested. Defendant asserts that it provided compliant wage statements throughout the entire class period and that Defendant could have prevailed on the "knowing and intentional" and "injury" elements required for penalties to be awarded under Labor Code § 226(e), which would have barred Plaintiff and the class from any recovery.

In light of all these risks, Plaintiff asserts that this settlement is fair, adequate, and reasonable.

### b.    The Settlement is Within the Range of Reasonableness

The standard of review for class settlements is whether the Settlement is within a range of reasonableness. As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.…

4 *Newberg on Class Actions* §11.45.

Here, the settlement fund is non-reversionary, such that 100% of the Net Settlement Amount will be available for distribution to class members who do not opt-out. Moreover, the settlement does not require claim forms. Rather, class members who do not opt-out will receive a check. Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.). In addition, as set forth in the Settlement Agreement, the class release is expressly limited to the

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
REPRESENTATIVE ACTION SETTLEMENT**

class and representative claims asserted in this case, *i.e.*, unpaid premiums and penalties associated with Defendant's policy of providing non-compliant meal and rest breaks, distributing final wages in the form of a pay card, and issuing inaccurate wage statements. The released claims are identical to the causes of action pled or could have been pled based on the facts of the Complaint, including any derivative claims under the FLSA. For these reasons, and for the reasons set forth above relating to the total liability and the risks of prevailing on the theories of liability alleged, Plaintiff believes that the current Settlement is fair, reasonable, and adequate.

### c. The Complexity, Expense, and Likely Duration of Continued Litigation Against the Settling Defendant Favors Approval

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation. *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. In applying this factor, the Court must weigh the benefits of the Settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial. *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The Settlement provides to all class members fair relief in a prompt and efficient manner. Moreover, even if Plaintiff reached the issue of class certification, the losing party would likely seek an appeal of the certification decision. Following a decision by the trier of fact, the losing party would have the right to appeal. Given the realities of litigation, this process places ultimate relief several years away. The idea of balancing a fair recovery now, with settlement dollars being paid out now, as opposed to a years-long litigation and appeal process regarding various potential issues, is a significant factor to be considered. *DIRECTV*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than

further protracted and uncertain litigation.").

Further, were the case to be denied class certification, the class members could be left without a remedy as a practical matter and courts across the state would have to address the issues presented here in a piecemeal, costly, and time-consuming manner. The Settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits." *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); 4 *Newberg on Class Actions* § 11.41.

### d.    Non-Admission of Liability by Defendant

Finally, Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in this lawsuit, and further denies that, for any purpose other than that of settling this lawsuit, this action is appropriate for class treatment. Defendant maintains that it has complied at all times with California wage and hour laws. Because of such denial, if this case is not resolved, it will likely continue to be a long and protracted litigation.

## F.    The Proposed Settlement Class Satisfies the Elements for Certification

### 1.    Numerosity

The numerosity requirement is satisfied if the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Indeed, courts have found numerosity established by class actions consisting of as little as seven putative class members. *Patrick v. Marshall*, 460 F. Supp. 23, 26 (N.D. Cal. 1978); *Jordan v. L.A. County*, 669 F.2d 1311, 1320 (9th Cir. 1982) (noting, in dicta, that the court "would be inclined to find the numerosity requirement...satisfied solely on the basis of [39] ascertained class members"), vacated on other grounds, 459 U.S. 810,

23

103 S. Ct. 35, 74 L.Ed.2d 48 (1982). The Class consists of approximately 339 total persons. (Settlement Agreement ¶ G.61.) Accordingly, here, the Settlement Class is numerous and clearly satisfies the numerosity prong.

### 2.    Ascertainability

The Class is ascertainable and has already been identified in Defendant's records. (Rosenthal Decl. ¶ 4.)

### 3.    Typicality

Typicality under Rule 23(a)(3) is satisfied if the representative plaintiff's claims share a common element with the class: i.e., those claims arise from the same course of conduct that gave rise to the claims of other settlement class members. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988). Here, Plaintiff submits that his claims are typical of those of other class members because he alleges that he was subjected to the same meal and rest break procedures and received the same wage statements that failed to identify the rates of pay and number of hours worked for overtime and shift differential wages as received by members of the class. Plaintiff also alleges that he received his final wages in the form of a pay card. (Declaration of Ernesto Delgado ("Delgado Decl.") ¶ 6.) Therefore, it is Plaintiff's position that his claims are typical of the class as a whole. (*Id*.)

### 4.    Commonality

Commonality relates to whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, Plaintiff contends that his claims for meal and rest period premiums, and penalties for wages owed at separation of employment are suited for class treatment. *Greer v. Dick's Sporting Goods, Inc.*, 2017 WL 1354568, at *6 (E.D. Cal. Apr. 13, 2017); *Rodriguez v. Nike Retail Services, Inc.*, 2016 WL 8729923, at *6 (N.D. Cal. Aug. 19, 2016); *Chavez v. Converse, Inc.*, N.D. Cal.

Case No. 15-3746 NC, Dkt. No. 89 (N.D. Cal. Sept. 22, 2016); *Otsuka v. Polo Ralph Lauren Corp.*, 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 596 (C.D. Cal. 2015). Plaintiff further contends that his wage statement claims are aptly suited for class treatment. *Magadia v. Wal-Mart Assocs., Inc.*, 324 F.R.D. 213, 225 (N.D. Cal. 2018) (certified Section 226(a) claims). Thus, Plaintiff contends that this class action may be certified for settlement purposes.

### 5.    Adequacy

Adequacy under Rule 23(a)(4) is satisfied if the named plaintiffs have no disabling conflicts of interest with other members of the class and Class Counsel are competent and well qualified to undertake the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). No conflict exists between Plaintiff and the Class because Plaintiff alleges that he has been damaged by the same alleged conduct as all class members and has the incentive to fairly represent all class members' claims to achieve the maximum possible recovery. (Delgado Decl. ¶ 9.) Plaintiff has spent considerable efforts in this case, including assisting with investigation, providing documents, and sitting for a deposition. (*Id*. ¶ 7.) Plaintiff remains willing to vigorously prosecute this action to the benefit of the class. (*Id*. ¶ 10.) Moreover, Plaintiff is represented by attorneys who have extensive experience in complex wage and hour litigation as is detailed in each of their declarations supported herewith.

### 6.    Common Questions of Law and Fact Predominate

Here, common questions of law or fact predominate over individual questions pursuant to Rule 23(b)(3). As discussed above, the issues of fact and law raised in this action are common to all members of the classes and predominate in this case.

///

///

**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

7. **Superiority of Class Action**

The requirement that a class action is superior to other methods of adjudication under Rule 23(b)(3) is also met. Courts have recognized that the class action device is superior to other available methods for the fair and efficient adjudication of controversies involving large number of employees in wage and hour disputes. *See*, *e.g., Hanlon*, 150 F.3d at 1022. Without class-wide relief in this action, the class members would be forced to litigate numerous cases on a piecemeal basis.

G. **The Notice to be Given is the Best Practical**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal or compromise." Fed. R. Civ. P. 23(e)(B).

Under the Settlement, the Settlement Administrator is to mail via first class mail a copy of the Court-approved Notice of Proposed Class Action Settlement and Setting of a Final Approval Hearing ("Notice") to all Settlement Class Members. The Settlement Administrator will conduct a search based on the National Change of Address Database, or other similar service, to update and correct for any known or identifiable address changes prior to mailing. The Notice provides the Settlement Class with the information needed to make an informed decision. It provides an explanation of the proposed settlement and procedures on how to object, how to opt-out of the settlement, and how to appear at the final approval hearing. The Notice provides a brief explanation of the case, the exclusion and objection procedures/deadline, how to access court records, a toll-free telephone number to obtain more information, the attorneys' fees to be paid, and the individual member's number of applicable work weeks. It also states that those

who do not opt out of the settlement will be bound by the Settlement related to the release of individual or class claims.

### H.     Attorneys' Fees, Costs, and Class Representative Service Award

Pursuant to the terms of the Agreement, and without opposition from Defendant, Plaintiff will also be entitled to request a service award of up to a maximum of $10,000.00, which is to compensate Plaintiff for prosecuting this case, participating in discovery, including testifying at his deposition, making himself available as needed, including for trial, protecting the interests of the class, and executing a general release with a California Civil Code § 1542 waiver. *Cook v. Niedert*, 142 F.3d 1004, 1015 (7th Cir. 1998); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995). Similarly, Class Counsel will seek an award of attorney's fees of not more than one-third of the Gross Settlement Amount (or $155,000.00) and reimbursement of actual costs incurred of up to $25,000.00. Both the requested service amount and attorneys' fees and costs will be requested simultaneously with Plaintiff's motion seeking final approval of this class action settlement.

### I.     Settlement Administrator

The Parties have selected Phoenix Settlement Administrators ("Phoenix") as the Settlement Administrator. (Settlement Agreement ¶ A.31.)

Notice by U.S. mail, along with the National Change of Address search, has been approved by numerous courts and, therefore, the Parties agreed to notice by U.S. mail. (*Id.*) Again, the costs for the settlement administration are not to exceed $11,000.00. Plaintiff and his counsel believe that this amount is reasonable in relation to the value of the settlement, as the administration costs account for only 2.4% of the Gross Settlement Amount. The settlement administration costs will be deducted from the Gross Settlement Amount.

///
///

**J.      Class Action Fairness Act ("CAFA")**

This settlement is subject to the CAFA notice requirements. *See* 28 U.S.C. § 1715. As required by the Agreement, Defendant will provide the required notice to the Attorney General of the United States and all relevant State Attorney Generals within the time period provided by 28 U.S.C. § 1715(b).

## III.    CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court (1) grant preliminary approval for the proposed class action settlement; (2) authorize the mailing of the proposed notice to the class of the settlement; and (3) schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

Dated:  October 8, 2021                    DIVERSITY LAW GROUP, P.C.


By: _____
        Larry W. Lee
        Kristen M. Agnew
        Nicholas Rosenthal
    Attorneys for Plaintiff and the Class